STATE DIVISION OF HUMAN RIGHTS on Complaint of STATE DIVISION OF HUMAN RIGHTS, Respondent, *v.* KILIAN MANUFACTURING CORPORATION, Petitioner.

Fourth Department, October 26, 1973.

*Coulter, Fraser, Carr, Ames & Bolton (Henry S. Fraser* of counsel), for petitioner.

*Henry Spitz (Howard Hertzberg* of counsel), for respondent.

CARDAMONE, J.  This proceeding presents first for determination the question as to whether the State Division of Human Rights has authority to file a complaint, upon its own motion, claiming a violation of the Human Rights Law absent an individual complainant; and, second, assuming it has such authority, did the division properly find petitioner engaged in an unlawful discriminatory practice.

The facts are not in dispute.  The petitioner, Kilian Manufacturing Corporation, has been manufacturing bearings and casters in Syracuse for 50 years.  It has never hired a Negro or Spanish-surnamed person prior to the commencement of these proceedings.  Petitioner derives two thirds of its work force from the City of Syracuse and Blacks constitute approximately 10.7% of the city population.  There is no requirement or test required to obtain employment at Kilian.  The policy is to train employees on the job.  Employment has been 85% by referrals from present employees and 15% by "walk-ins".  Petitioner has never advertised for employees since its active file of applicants furnished it with sufficient personnel.

On these facts the State Division of Human Rights filed a complaint charging petitioner with an unlawful discriminatory practice relating to employment.  Following a hearing, the division found that petitioner's recruitment practices were discriminatory and in violation of the Human Rights Law.  The State Human Rights Appeal Board affirmed and petitioner appealed to this court seeking judicial review.

The statute under which the division unilaterally acted empowers it:  "Upon its own motion, to test and investigate and to make, sign and file complaints alleging violations of this article and to initiate investigations and studies to carry out the purposes of this article" (Human Rights Law [Executive Law, art. 15], § 295, subd. 6, par. [b]).  We recognize that in many cases before the division there have been individual complainants, or complaints from the Attorney-General or the Commissioner of Labor.  A fair reading of the quoted statutory language "to make, sign and file complaints" compels the conclusion, however, that the division has authority to act upon its own motion regardless of the existence of any individual complainant or complaint.  Indeed, the Legislature intended to provide the division with sufficient authority to implement its long-range goals without requiring it to rely on individual complainants, recognizing that the power of affirmative action in the area of human rights is a proper government function (see N. Y. Legis. Annual, 1965, pp. 214–215).  Clearly, the exercise of this author-

ity is not left to the unfettered discretion of the division. The Governor in approving the enabling legislation stated: '' The present bill will give the Commission itself, *acting under rules assuring due process of law,* the power to set its own enforcement machinery in operation '' (see Governor's Memoranda, N. Y. Legis. Annual, 1965, p. 501; emphasis supplied), and the statute itself imposes upon the division the duty of '' testing and investigating '' the circumstances of a suspected violation of the statute. The division is required to find probable cause where it acts in response to an outside complaint (§ 297). Similarly, minimal standards of due process dictate, and we so hold, that where the division acts unilaterally upon its own conclusion of discrimination, such conclusion be supported by findings of fact and such findings be set forth in the complaint or in the direction for a public hearing. To permit the division to proceed merely upon a statement of its conclusions would deny to the charged party its due process right to be fully and fairly apprised of the factual nature of the charges being made against it. The complaint filed by the division in this case merely alleges that petitioner Kilian's system of hiring has produced few Negro and Spanish-surnamed employees under circumstances where such minority groups are available for employment. In its finding of '' probable cause '' and direction to issue notice of a public hearing, the division states that it made '' an investigation '' in connection with the charges of the complaint. However, the record is barren of findings of fact resulting from this investigation. We conclude that in the absence of a statement of the findings of fact either in the complaint or in the direction for a public hearing the division is without sufficient basis to proceed upon its own motion. This point alone, requires reversal.

The division cross-moved for enforcement of the Human Rights Appeal Board order dated May 15, 1973. Since this order contained affirmative directions which, *inter alia,* required Kilian additionally to recruit from the New York State Employment Service, local employment agencies, newspapers, schools and minority group organizations, we shall consider the merits of the appeal with respect to the claim that petitioner was engaged in an unlawful discriminatory practice.

Petitioner imposed no requirement upon prospective employees. There is no suggestion in the record that petitioner ever discriminated against any minority group applicant. In *Griggs v. Duke Power Co.* (401 U. S. 424), the Supreme Court held that employment practices must not only be fair in form but also

in operation and that such practices must be judged by their consequences stating, however "what is required  *  *  *  is the removal of artificial, arbitrary and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.  *  *  *  The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance the practice is prohibited." (pp. 431–432). In effect, petitioner has hired whoever wanted a job when it had an opening. Unlike the facts in *Griggs* petitioner did not require a high school diploma or satisfactory scores on an aptitude test for employment. Petitioner has no " arbitrary, artificial or unnecessary barrier " to employment since a prospective employee need only file an application to be employed. Such a practice is fair in form and imposes no barrier. Such hiring practice cannot properly serve as the basis to sustain a claim of discrimination. The fact that there are 10.7% Blacks in an area where a majority of petitioner's employees are resident and that minority groups do not constitute a similar percentage of petitioner's employees does not prove, standing alone as it does here, discrimination against minority groups (cf. *Whitcomb* v. *Chavis,* 403 U. S. 124; *People* v. *Chestnut,* 26 N Y 2d 481).

Finally, the affirmative action directed by the division requires that petitioner, *inter alia,* engage in wide-scale advertising and recruiting of minority group employees although there is presently no business necessity to do so. This affirmative provision in the order, without proof of discriminatory hiring practices, exceeds the power granted to the Division of Human Rights (*Matter of State Comm. for Human Rights* v. *Farrell,* 24 A D 2d 128, 132).

The order of the State Human Rights Appeal Board should be reversed and petitioner's motion to have the division's complaint dismissed should be granted. The State Division of Human Rights' cross motion for an enforcement order should be denied.

DEL VECCHIO, J. P., MARSH, SIMONS and HENRY, JJ., concur.

Order of Appeal Board unanimously reversed, petitioner's motion granted and complaint dismissed; cross motion for enforcement order denied; all with costs to petitioner.